**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00281-CV**
_____

**UNITED OPERATIONS, LLC, Appellant**

**V.**

**EDGE FINANCE, LLC, Appellee**

_____

**On Appeal from the County Court at Law No. 6**
**Montgomery County, Texas**
**Trial Cause No. 23-09-13586-CV**
_____

**MEMORANDUM OPINION**

Appellant United Operations, LLC ("United" or "Defendant") appeals the trial court's summary judgment in favor of Appellee Edge Finance, LLC ("Edge" or "Plaintiff"). In one issue, United argues the trial court erred in granting the motion for summary judgment because there is a genuine issue of material fact as to at least one essential element of each cause of action asserted by Edge. We reverse and remand.

1

Background

Plaintiff's Petition

On September 14, 2023, Edge filed its Original Petition, alleging that United and Edge agreed that Edge would provide United "mudlogging, geosteering, and geoscience services with associated labor and equipment." According to the petition, Edge fully performed all its obligations to United, and all conditions precedent have been performed or have occurred. Edge alleged that it supplied United with the "mudlogging, geosteering, and geoscience services with associated labor and equipment[]" and United did not pay Edge. According to Edge, United accepted the services provided by Edge, as evidenced by its use of the services and equipment and by stamping of the invoices attached to the petition. According to Edge, despite repeated demands for payment, United failed to pay the outstanding amount. Edge brought claims against United for breach of contract, suit on a sworn account, and in the alternative, quantum meruit and unjust enrichment. Edge sought damages of at least $109,305.75, and attorney's fees, costs, and pre- and post-judgment interest.

Attached as Exhibit A to Edge's petition is an affidavit of Daniel Baker, President and CEO of Edge, stating the following, in relevant part:

> [] I am President and CEO at Edge Finance LLC ("Edge"). I acquired personal knowledge of these fact[s] in overseeing the handling of the accounts receivables and collections for Edge related to the underlying action filed against United Operations LLC ("United" or "Defendant") and as set forth in Plaintiff Edge Finance LLC's Original Petition. This

2

action is for goods and services provided, of which a systematic record was kept.

[] I have read Edge's Original Petition filed against United, and the facts stated herein are within my personal knowledge and are true and correct. As an agent of Edge, I have in my care, custody, and/or control the records of Edge pertaining to Defendant and I am familiar with said records. Attached to this affidavit as [Exhibit] A-1 is a true and correct copy of the invoices which are contained in Edge's files regarding Defendant.

[] I am custodian of Edge's files regarding Defendant. The aforementioned invoices are kept by Edge in its ordinary course of business and it was the regular course of business of Edge for an employee or representative of Edge, with knowledge of the act, event, condition or opinion recorded in such files to make the record or transmit information thereof to include in such records; and the record was made at or near the time of the act, event, condition, or opinion or reasonably soon thereafter.

[] The debt in the amount of $109,305.75, that forms the basis of Edge's Invoices, attached herein as [Exhibit] A-1, is (1) within my personal knowledge, (2) just and true, (3) due and owing by defendant, and (4) such that all just and lawful offsets, payments, and credits to this account have been allowed.

[] The prices charged by Edge for providing the goods and services set forth in [Exhibit] A-1 were agreed upon by Defendant and were reasonable, and Defendant did not dispute the invoices that Edge sent to Defendant.

[] Edge sent Defendant a Demand for Payment of the balance due and owing over thirty days ago. A true and correct copy is attached. See Exhibit A-2. Defendant has not paid its debts.

Attached to Baker's affidavit as Exhibit A-1 are two invoices from Edge to United and corresponding "field tickets" indicating delivery of the equipment and performance of services. One of the invoices, dated February 1, 2023, with a due

3

date of March 3, 2023, reflects invoiced items were provided for the "Hart #1" well for logging period "12/9/2022 thru 1/31/2023" with the terms of "Net 30 Days" totaling $83,110.25. The corresponding Field Ticket for that invoice was signed by an "Acknowledger" for United, acknowledging on February 14, 2023. The Field Ticket contains a "Date of Acknowledgment[]" and it refers to a start date of 12/9/2022 and an end date of 1/31/2023. The Field Ticket also provides a day rate of $1,450/day. The ticket reflects the same price and the same total price as the corresponding invoice. Notably, United also had its representative stamp certain language on the Field Ticket after it received the equipment as follows:

Hart No. 1 Well – Jackson County, Texas
UNITED OPERATIONS LLC – Operator
The undersigned only acknowledges services were performed and/or equipment/supplies were delivered related to this ticket. The undersigned has no authority to approve the pricing or terms and conditions printed on this ticket; nor does the undersigned have any authority to contractually bind Operator.
Service Provider:_____
Delivery Ticket Number:_____
Signature of Acknowledger:_____
Name of Acknowledger:_____
Date of Acknowledgment:_____
Comments or Disapprovals (if any):____
_____

In the blank next to Service Provider there is a handwritten note "EDGE SYSTEMS[,]" "4868" is written as the Delivery Ticket Number, a signature and name of Acknowledger was handwritten, "2-14-23" was handwritten in as the Date of Acknowledgement, and the space for "Comments or Disapprovals (if any)[]" was

4

left blank. The other invoice dated February 17, 2023, with a due date of March 19, 2023, reflects invoiced items were provided for Hart #1 well for the logging period "2/1/2023 thru 2/17/2023" with the terms of "Net 30 Day" totaling $26,195.50. The corresponding Field Ticket for that invoice was signed by a different Acknowledger for United, the ticket acknowledged on February 17, 2023 that the goods had been delivered and the services had been performed, and the ticket reflects the same item prices and total price as the corresponding invoice. The Field Ticket for the second invoice had been stamped by United with the same typed language as the first invoice, and on the blanks for the typed language, "EDGE SYSTEMS" was handwritten in as the Service Provider, "004892" was handwritten in as the Delivery Ticket Number, a signature and name of Acknowledger was handwritten in, "2-17-2023" was handwritten in as the Date of Acknowledgement, and the space for "Comments or Disapprovals (if any)[]" was left blank. Attached as Exhibit A-2 to Baker's affidavit is a June 19, 2023 letter from Edge's legal counsel addressed to Scott V. Van Dyke, United's President, regarding "Demand for Payment of Past Due Invoices – Totaling $109,305.75[,]" the total for the two invoices. The letter states the following:

> This law firm represents the interest of Edgelog Finance, LLC ("Edgelog") as it pertains to the past due amount owed by United Operations, LLC ("United") for mudlogging services provided from December 9, 2022 to February 17, 2023.
> United is indebted to Edgelog in the total principal amount of $109,305.75 for services rendered and equipment provided. Although

5

United has been provided with these invoices and informed of their past due status, United has failed to pay the amounts duly owed to Edgelog.

This letter is to again demand payment and to advise you that—if payment has not been made with[in] fourteen (14) days of receipt of this letter—Edgelog will proceed with moving forward with any and all legal rights it has to collect the amounts owed to it, including but not limited to seeking any attorney's fees and interest allowable at law.

My client or myself are happy to discuss further if needed.

The February 1, 2023 and February 17, 2023 invoices and corresponding Field Tickets were attached to the letter.

Defendant's Answer

United filed an Original Answer, generally denying Edge's allegations. In Defendant's First Amended Answer, United generally denied Edge's allegations and asserted some defenses and affirmative defenses. United denied the amount alleged by Edge for the sworn account; denied that an oral or written contract existed setting the price for the goods or services; disputed the prices charged in the invoices attached to the petition; and alleged that the account as pleaded by Edge does not include all offsets, payments, and credits. United asserted that Edge's claims were barred by a lack of consideration or a failure of consideration. In the alternative, United asserted that Edge's claim for attorney's fees is barred because Edge never made a timely, sufficient, or reasonable demand on United, and United pleaded "the doctrine or defense of 'excessive demand.'"

6

Plaintiff's Traditional Motion for Summary Judgment (the "MSJ")

Edge filed a Traditional Motion for Summary Judgment, arguing that there is no genuine issue as to any material fact that Edge provided goods and services in the usual course of business to United, United accepted those goods and services from Edge as evidenced by United's stamping of the invoices, and United has failed and refused to pay the amounts outstanding. Edge asserted it is entitled to judgment as a matter of law on its causes of action for breach of contract, sworn account, and, in the alternative, claims for unjust enrichment and quantum meruit, and that Edge has been damaged in the amount of $109,305.75 plus costs and attorney's fees. According to Edge, the Sworn Affidavit of Daniel Baker attached to the MSJ establishes that Edge and United agreed that Edge would provide United with mudlogging, geosteering, and geoscience services with associated labor and equipment, and there is no dispute that Edge delivered to United those goods and services. Edge alleged it performed all its obligations to United and all conditions precedent to United's obligation to pay have been performed or occurred; the February 1, 2023 and February 17, 2023 invoices and corresponding field tickets attached to the MSJ as Exhibit A-1 reflect that United accepted the services; Exhibit A-2 attached to the MSJ evidences that Edge repeatedly demanded payment but has failed to pay the amounts outstanding; and that Exhibit B attached to the MSJ indicate that United's President Scott Van Dyke emailed Edge on June 1, 2023,

apologizing to Edge for not yet providing payment for the invoices and assuring

Edge that United was actively working to raise capital to pay the invoices.

Attached as Exhibit A to the MSJ is the Sworn Affidavit of Daniel Baker,

wherein he avers:

1. My name is Daniel Baker, I am of sound mind and fully competent to make this declaration. I declare under penalty of perjury that the foregoing is true and correct.
2. I am over twenty one years of age and have never been convicted of a felony or crime involving moral turpitude. I am fully competent to testify to the matters stated in this Affidavit.
3. I am President and CEO at Edge Finance LLC ("Edge"). I acquired personal knowledge of these facts in overseeing and handling of the accounts receivables and collections for Edge related to the underlying action filed against United Operations LLC ("United" or "Defendant") and as set forth in Plaintiff Edge Finance LLC's Original Petition. This action is for goods and services provided, of which a systematic record was kept.
4. As an agent of Edge, I have in my care, custody, and/or control the records of Edge pertaining to Defendant and I am familiar with said records. Attached to this affidavit as Exhibit A-1 is a true and correct copy of the invoices which are contained in Edge's files regarding Defendant.
5. I am a custodian of Edge's files regarding Defendant. The aforementioned invoices are kept by Edge in its ordinary course of business and it was the regular course of business of Edge for an employee or representative of Edge, with knowledge of the act, event, condition, or opinion recorded in such files to make the record or transmit information thereof to include such records; and the record was made at or near the time of the act, event, condition, or opinion or reasonably soon thereafter.
6. The debt is in the amount of $109,305.75, that forms the basis of Edge's Invoices, attached herein as Exhibit A-1, is (1) within my personal knowledge, (2) just and true, (3) due and owing by defendant, and (4) such that all just and lawful offsets, payments, and credits to this account have been allowed.

7. Edge and the Defendant agreed that Edge would provide Defendant the goods and services of mudlogging, geosteering, and geoscience services with associated labor and equipment. The prices charged by Edge for providing the goods and services set forth in Exhibit A-1 were agreed upon by Defendant and were reasonable.

8. As evidenced by Defendant's stamping of the relevant invoices, specifically invoices dated February 01, 2023 and February 17, 2023, Edge delivered the goods and services to Defendant and Defendant did not dispute the invoices that Edge sent to Defendant. *See* Exhibit A-1.

9. Despite Edge's repeated demands for payment, Defendant has failed to pay the amounts outstanding.

10. The President and registered agent of Defendant, Mr. Scott V. Van Dyke, contacted Edge via email on June 01, 2023. In his June 1st email, Mr. Van Dyke apologized to Edge for not yet providing payment for the relevant invoices and assured Edge that Defendant was actively laboring to raise additional capital to pay the relevant invoices. *See* Exhibit B.

11. After the June 1st email, Defendant did not pay its debts to Edge.

12. Edge sent Defendant a Demand for Payment of the balance due and owing on June 19, 2023. A true and correct copy is attached. *See* Exhibit A-2. Defendant has not paid its debts.

13. Exhibits A[-]1[,] A-2 and Exhibit B attached hereto, are true and correct copies of the same and can be found in the corporate records of Edge. Such records are maintained and were made at or near the time of creation of the same in it[s] ordinary course of business and by a person with knowledge in the regular course of business.

14. Edge provided the agreed upon goods and services in the usual course of business to Defendant, Defendant accepted the goods and services from Edge, and Defendant failed and/or refused to pay the amounts outstanding.

15. Edge has been required to retain and pay for counsel in relation to this matter.

Exhibits A-1 (invoices and field tickets) and A-2 (demand for payment) are attached

to the affidavit and appear to be the same Exhibit A-1 and Exhibit A-2 attached to

9

Baker's affidavit which was attached to Edge's petition. Another Exhibit attached to the MSJ is a June 1, 2023 email from Scott Van Dyke to Daniel Baker, stating:

> Subject: Outstanding Invoices
>
> Dear Daniel,
> Good morning, I received your correspondence via LinkedIn.
> We are sorry for the unpaid invoices. Please note that United Operations LLC filed the attached lawsuit on March 8, 2023. While we expect to bring this lawsuit to a successful conclusion, we are not waiting to collect proceeds from the lawsuit to pay our vendors. We are actively working to raise additional capital so we can pay our bills and finish drilling our well.
> I appreciate your support as we deal with this situation. Please feel free to direct all future emails to me regarding the unpaid account.
>
> Yours sincerely,
> Scott V. Van Dyke
> President

The email included a link with a pdf file named "2023-03-08 UNITED Original Petition – FINAL.pdf[.]"

According to the MSJ, there is no genuine issue of material fact that Edge sold and delivered the services and equipment requested; that the account is just and that prices were in accordance with their agreement and the usual, customary, and reasonable prices; that the amount is unpaid; and that Edge was damaged in the amount of $109,305.75 and incurred attorney's fees. In the alternative, Edge argues that (1) as to its unjust enrichment claim, there is no genuine issue of material fact that United wrongfully secured a benefit of valuable services performed without payment and for which it would be unconscionable to retain, and Edge's incurred

10

damages of $109,305.75 and attorney's fees; and (2) as to its quantum meruit claim, there is no genuine issue of material fact that valuable services and equipment were furnished, United received these items, United had full knowledge that Edge was expecting to be paid, and Edge incurred damages of $109,305.75 and attorney's fees. Edge requested that the trial court grant the motion, and award Edge the principal sum of $109,305.75, pre- and post-judgment interest, reasonable and necessary attorney's fees, and court costs.

Defendant's Amended Answer and Response to the MSJ

At the time Edge filed its MSJ, United had only filed a general denial. Edge alleged in its MSJ that United had not timely filed a sworn denial in accordance with Rule 185 and Rule 93(10).

United filed a First Amended Answer on the same date it filed a Response to the MSJ and United included a verification. We need not decide whether the First Amended Answer and verification were untimely filed or inadequate to meet the requirements of a sworn denial under Rules 93(10) and 185 because Edge did not make either argument in the trial court, nor have they made that argument on appeal.

United also filed a Response to Edge's MSJ and attached the Affidavit of Scott Van Dyke. As to Edge's breach of contract claim, United argued that there was no valid existing contract because Van Dyke did not agree upon the prices claimed by Edge and that, although Van Dyke apologized to Baker for not yet providing

11

payment and assured Baker that United was actively working to raise additional capital to pay its vendors, Van Dyke never said that he or anyone else at United agreed with the amount of Edge's invoices or the price structure. United also argued that delivery of the goods with a field ticket signed by United's onsite personnel did not constitute a contract because that person did not have the authority to agree to terms or prices and he was not an agent of United, as explained in the stamped disclaimer on the field tickets attached to Edge's MSJ. As to Edge's quantum meruit claim, United argued that there is a genuine issue of material fact regarding the reasonable value of the goods and services supplied by Edge, and that Edge has not submitted any summary judgment evidence, other than Baker's affidavit concluding that the prices charged by Edge were reasonable, nor evidence to show that the prices charged by Edge reflect the reasonable value of the goods and services. As to Edge's unjust enrichment claim, United argued that there are genuine issues of material fact precluding summary judgment because there is no summary evidence to support a finding that United obtained Edge's goods and services by fraud, duress, or taking of an undue advantage. United also argued that Edge is not entitled to summary judgment on its sworn account claim because the account has been denied by United in a verified denial and in Van Dyke's affidavit, and the affidavit creates a genuine issue of material fact on the element of "usual, customary, or reasonableness" of the charges.

In the Affidavit of Scott Van Dyke attached to United's Response, Van Dyke averred as follows:

1.  My name is Scott Van Dyke. I am more than eighteen years of age and am fully competent to make this declaration. I have knowledge of all facts set forth herein and they are true and correct.
2.  I am the president, manager, and sole member of United Operations, LLC ("United"). United is in the business of drilling and operating oil and gas wells.
3.  United is an operator of the oil and gas well known as the Hart No. 1 well in Jackson County, Texas. In December of 2022, United's company man at the well ordered a two-man mud logging unit and communications package from Edge Finance, LLC ("Edge") for its drilling operation. There was no written contract. There was no oral agreement on the price. The company man was not authorized to negotiate or agree on terms including price. Edge never disclosed the price and did not contact United's authorized representatives to disclose a price in any way.
4.  Edge delivered and started the equipment on December 9, 2022. United used Edge's equipment through February 17, 2023.
5.  Edge delivered the field/delivery tickets to the company man who was watching the Hart No. 1 well on February 14, 2023, and on February 17, 2023, respectively, which was after the equipment use was finished.
6.  In January of 2023, United experienced a downhole problem as it was drilling. United ordered a composite plug (which was supposed to be entirely fiberglass) to be set in its 7-5/8th casing for a test at the Hart No. 1 well. The parties involved supplied what appears to have been a permanent plug made of very hard metal instead of composite plug. After spending almost a month (and close to $3 million in costs) trying to retrieve the plug, United was forced to cease all operations when the plug caused about 600 feet of bottom hole assembly to get stuck in the well. United was experiencing these incredibly complicated downhole problems and recovery efforts at the very time that the field/delivery tickets were delivered to the company man at the site of the Hart No. 1 well.
7.  The company man who was on site and accepted delivery of the equipment was a contract person who had the authority to verify

13

the delivery of Edge's equipment, but he was not an agent of United and was not authorized to bind United on pricing or invoicing.

8. I received the invoices in the mail sometime after February 17, 2023. When I received the invoices from Edge, I realized that Edge had charged rates higher than what is usual, customary, and reasonable for that equipment and the services for the equipment. United did not agree[] on those prices for the goods and services that were provided. The prices charged in the invoices are not usual, customary, or reasonable. The prices that Edge has charged in its invoices do not reflect a reasonable value for the goods and services that were provided.

9. United did not obtain the goods and services from Plaintiff by fraud, duress, or the taking of an undue advantage of Plaintiff.

10. It is true that I responded to Edge's email on June 1, 2023, and apologized to Mr. Baker of Edge for not yet providing a payment. Although I assured Mr. Baker that United was actively laboring to raise additional capital to pay its vendors, I did not say that I or anyone else at United agreed with the amount of Edge's invoices or the price structure. I did not think it was appropriate at that time to raise the disputes at that time.

Plaintiff's Reply to Defendant's Response to the MSJ

Edge filed a Reply to United's Response, and noted that United's Response included several admissions supporting Edge's MSJ: Van Dyke admitted in his affidavit that United's "company man" ordered the equipment and services from Edge, United received Edge's goods and services on December 9, 2022, United used Edge's equipment and services through February 17, 2023 to conduct its oil well operations, and that the "company man" signed for the goods and services on February 14, 2023, and February 17, 2023. According to Edge, United does not dispute that it has never paid Edge any amounts for the equipment and services

14

provided by Edge, Van Dyke apologized for the unpaid invoices without raising any issue about the amount of the invoices and promised to pay the invoices once capital was raised or its lawsuit was successfully litigated, that prior to the filing of United's Response to Edge's MSJ no person from United ever communicated to Edge that Edge's prices were not the agreed to or customary and reasonable prices for its equipment and services, and that Van Dyke's statement that he "did not feel it was appropriate at [the time of the June 1, 2023 email] to raise the disputes[]" fails to meet the requirement of summary judgment evidence. As for Van Dyke's conclusion in his affidavit that the prices were not customary or reasonable, Edge argues that such legal conclusions are insufficient for United to survive summary judgment because Van Dyke failed to substantiate the conclusion by providing a factual basis for which he has personal knowledge.

Summary Judgment and Post-Judgment Pleadings

On May 22, 2024, the trial court signed an Order Granting Plaintiff's Motion for Summary Judgment. The trial court stated in the order that "[t]he evidence establishes that there is no genuine issue of material fact and Plaintiff is entitled to judgment as a matter of law as to Plaintiff's causes of action [for] (1) Breach of Contract and (2) Unjust Enrichment[,]" and the trial court granted Edge's MSJ only as to those two causes of action. The Order stated that it "is a final judgment, disposing of all parties and claims," and the trial court awarded Edge a judgment for

15

$109,305.75, with pre- and post-judgment interest, and court costs. The trial court did not award Edge any attorney's fees.

United filed a Motion for New Trial. Edge responded to the motion, and the motion was overruled by operation of law. United timely appealed.

Standard of Review

We review grants of summary judgment de novo. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). The movant for a traditional motion for summary judgment has the burden to establish that no genuine issues of material fact exist, and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). If the moving party produces evidence entitling it to a summary judgment, the burden shifts to the nonmovant to present evidence that raises a material fact issue. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon*, 690 S.W.2d at 548-49. Every reasonable inference must be indulged in favor of the nonmovant, and any doubts must be resolved in the nonmovant's favor. *Id.* at 549.

Analysis

In one issue, United argues that the trial court erred in granting Edge's traditional motion for summary judgment against United because, at a minimum, there is a genuine issue of material fact as to at least one essential element of each cause of action asserted by Edge against United. Because the Order Granting Plaintiff's Motion for Summary Judgment granted the motion on Edge's claims of breach of contract and unjust enrichment, we limit our consideration to those two causes of action because a summary judgment can only be affirmed if a theory relied on by the trial court is meritorious, otherwise the case must be remanded. *See State Farm Fire & Casualty v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993); *Herring v. Telectronics Pacing Sys., Inc.*, 964 S.W.2d 753, 754 (Tex. App.—Beaumont 1998, pet. denied). Accordingly, we will not consider the merits of the other claims.

We first address the trial court's grant of summary judgment against United on Edge's breach of contract claim. United argues that the trial court erred in granting summary judgment on the breach of contract claim because there was a genuine issue of material fact as to the existence of a valid enforceable agreement between the parties. According to United, there was no contract between the parties for the rental of the equipment and no written or oral agreement between the parties on price for the rental of the equipment and that United's manager did not agree to the ex post facto prices invoiced by Edge. United argues that the "dueling affidavits"

17

of Baker and Van Dyke, the parties' principals, demonstrate a genuine issue of material fact as to whether the parties entered into a valid enforceable contract, that Van Dyke's June 1, 2023 email to Baker did not include any agreement on price, and that the delivery by Edge of the equipment with the field ticket did not evidence an agreement as to price.

A plaintiff moving for traditional summary judgment has the burden to conclusively prove all elements of its breach of contract claim as a matter of law. *See MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). A plaintiff claiming breach of contract must prove: (1) the existence of a valid contract; (2) the plaintiff's performance or tendered performance; (3) the defendant's breach of the contract; and (4) damages as a result of the breach. *Trahan v. Fire Ins. Exch.*, 179 S.W.3d 669, 674 (Tex. App.—Beaumont 2005, no pet.); *see also S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018). "The elements of written and oral contracts are the same and must be present for a contract to be binding." *Tyco Valves & Controls, L.P. v. Colorado*, 365 S.W.3d 750, 771 (Tex. App.—Houston [1st Dist.] 2012), *aff'd*, 432 S.W.3d 885 (Tex. 2014) (citing *Wal-Mart Stores, Inc. v. Lopez*, 93 S.W.3d 548, 555 (Tex. App.—Houston [14th Dist.] 2002, no pet.)). An agreement must be definite and certain with respect to those terms that are "material and essential" to the parties' agreement. *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016). The failure to include a price in a contract may not be fatal to the

18

existence of an agreement because when a contract fails to state an exact price, the law presumes the parties to the contract intended a reasonable price. *Seabourne v. Seabourne*, 493 S.W.3d 222, 229 n.9 (Tex. App.—Texarkana 2016, no pet.) (citing *Fischer*, 479 S.W.3d at 241).

As to its breach of contract claim against United, Edge argued in its MSJ that there is no genuine issue of material fact that United and Edge entered into an oral contract, that Edge provided the goods and services, United failed to pay, and that Edge was damaged in the amount of $109,305.75. Edge attached as summary judgment evidence the sworn affidavit of Daniel Baker, Edge's President, wherein Baker attested that: he "acquired personal knowledge of these facts in overseeing the handling of the accounts receivables and collections for Edge" relating to the lawsuit against United; he has in his care, custody, and control records of Edge pertaining to United; the invoices attached to his affidavit are true and correct copies and were kept by Edge in its ordinary course of business; United's debt in the amount of $109,305.75 reflected in the attached invoices is within Baker's personal knowledge, just and true, due and owed by United, and accounts for any lawful offsets, payments, and credits to the account; Edge and United agreed that Edge would provide the goods and services and that "[t]he prices charged by Edge for providing the goods and services set forth in Exhibit A-1 were agreed upon by [United] and were reasonable[;]" United's stamping of the invoices acknowledged Edge delivered

19

the goods and services and that United did not dispute the invoices; United failed to pay the invoices despite Edge's repeated demands for payment; as evidenced by a true and correct copy of a June 1, 2023 email from Van Dyke to Baker attached to Baker's affidavit, Van Dyke apologized for not yet providing payment for the invoices and assuring Edge that United was working to raise capital to pay the invoices; after Van Dyke's June 1, 2023 email, United did not pay its debts to Edge; as evidenced by a true and correct copy of a June 19, 2023 letter from Edge's legal counsel to United, attached to Baker's affidavit, Edge demanded payment from United for the debt; and after Edge sent the demand letter, United still did not pay the amounts outstanding and Edge had to retain counsel. In support of his affidavit, Baker attached copies of the two invoices showing the prices, field tickets on which United acknowledged delivery of the equipment, and the field tickets reflected the invoiced prices, a June 19, 2023 demand letter sent by Edge's counsel to United demanding payment, and a June 1, 2023 email from Van Dyke, United's President, to Baker.

Van Dyke's affidavit which is attached to United's Response to Edge's MSJ acknowledged that United's "company man" requested Edge's goods and services in December of 2022, that United accepted Edge's delivery of those goods and services in December of 2022, that United used those goods and services through February 17, 2023, and that United did not pay Edge for those goods and services.

20

Contrary to Baker's affidavit which asserts that United and Edge agreed on the prices reflected in the invoices, Van Dyke's affidavit asserts that the price for the goods and services was never negotiated or discussed. Van Dyke also states in his affidavit "[t]he prices charged in the invoices are not usual, customary, or reasonable. The prices that Edge has charged in its invoices do not reflect a reasonable value for the goods and services that were provided." In the trial court and in its reply brief, Edge objected to the Van Dyke statement that the prices charged are not usual, customary, or reasonable arguing they are legal conclusions. In the trial court, United did not object to Baker's affidavit wherein Baker states the charges are "reasonable." That said, United argues on appeal that the Baker affidavit "provides at most conclusory testimony" that the prices were "reasonable." An objection that an affidavit is conclusory is a substantive objection which can be raised for the first time on appeal. *Marteny v. Coon*, No. 09-23-00078-CV, 2024 Tex. App. LEXIS 8177, at *32 (Tex. App.—Beaumont Nov. 21, 2024, pet. denied) (mem. op.).

Taking the evidence presented in a light most favorable to the nonmovant, and after engaging in every reasonable inference in favor of the nonmovant as we must,[1] we conclude that United presented evidence with its response to the MSJ raising a genuine issue of material fact as to the amount of the damages and charges due under

---

[1] *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

the contract or under any alternative claim.[2] Because United raised a genuine issue of material fact as to at least one essential element of Edge's breach of contract claim and on any alternative equitable claim (as to the amount of the damages), we conclude the trial court erred in granting Edge's traditional motion for summary judgment against United.

We sustain United's issue, and we reverse the trial court's judgment and remand this matter to the trial court for further proceedings consistent herewith.

REVERSED AND REMANDED.

LEANNE JOHNSON
Justice

Submitted on May 16, 2025
Opinion Delivered August 28, 2025

Before Golemon, C.J., Johnson and Chambers, JJ.

---

[2] We note that when there is a valid contract addressing the matter in controversy it can preclude a quantum meruit or unjust enrichment claim. *See Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000).